UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

NOV 2 1 2011

Stephan Harris, Clerk
Casper

CATHY L. LANCE,

      Plaintiff,

vs.

ROCKY L. EDMONDS ATTORNEY AT
LAW; ROCKY L. EDMONDS, individually,
COLLECTION LAW CENTER, P.C.,
GERALD K. RUSSELL, President, GERALD
K. RUSSELL, individually, and DOES 1-10
;

      Defendants.

Case No.: 11CV359F

PLAINTIFF'S VERIFIED
COMPLAINT FOR CIVIL DAMAGES

1. FAIR DEBT COLLECTION
   PRACTICES ACT VIOLATIONS

2. RACKETEER INFLUENCED AND
   CORRUPT ORGANIZATIONS ACT
   VIOLATIONS.

3. VIOLATION OF W.S. 1-15-502

4. FRAUD ON THE COURT

**JURY TRIAL DEMANDED**

## INTRODUCTION

1.     This is an action for damages brought by an individual consumer, Plaintiff, for

Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq.

(hereinafter ''FDCPA'') plead in harmony with violations of the Racketeer Influenced and

Corrupt Organizations (RICO) Act, 18 U.S.C. 1962 et seq.

## JURISDICTION

2.     Jurisdiction of this Court arises under 28 U.S.C. §§ 1331, 15 U.S.C. § 1692k(d) and 18

U.S.C. § 1964, without regard to the amount in controversy, and pursuant to 28 U.S.C. § 1367

for pendent state law claims.

## VENUE

3.     Venue is proper in this Court because the acts complained of occurred in this District,

Plaintiff resides in this District and Defendants transact business in this District.

Receipt # _____
Summons: 2 issued
_____ not issued

## PARTIES

4.      Cathy L. Lance, hereinafter "LANCE" or "Plaintiff," is a natural person who is domiciled in the city of Riverton, County of Fremont, State of Wyoming.  All acts or actions complained of occurred while LANCE lived in Wyoming.

5.      Rocky L. Edmonds, hereinafter "EDMONDS" or "Defendant," is an individual and attorney for COLLECTION LAW CENTER, P.C., a collection agency, operating from an address of 402 6th Street, PO Box 1470, Rawlins, WY 82301 and does business in the forum state.

6.      GERALD F. RUSSELL, hereinafter "RUSSELL" or "Defendant," is an individual, attorney, owner and stakeholder of COLLECTION LAW CENTER, P.C., a collection agency, operating from an address of 402 6th Street, PO Box 1470, Rawlins, WY 82301 and does business in the forum state.

7.      COLLECTION LAW CENTER, P.C., hereinafter "CLC or "Defendant," an entity of fiction and a collection firm in the form of a professional corporation, is located at 402 6th Street, P.O.B. 1470, Rawlins, WY 82301 and does business in the forum state.

8.      Defendant CLC is a formal business structure, alleged to be a corporation, with offices in Wyoming, Colorado, Utah, Montana and Nebraska.   Defendant EDMONDS is a person, alleged to be employed by Defendant CLC, responsible for the pattern of activity in this Complaint. Parties outside of CLC formally-structured chain of command may be integrally complicit as an association in fact and where the participation is a vital and viral component in accomplishing the swindle.  Such persons or entities may be added to this suit as they and their role become known during discovery.

9.      Defendant CLC's business website, http://mycollectioncenter.com/, purports to offer, *inter alia*, commercial collection, early out/outsourcing, pre-placement analysis services, health

care payment systems, credit reporting and other functions, presumably lawful, separate and apart from the racketeering activity, which is the subject of this Complaint. CLC is also a known consumer debt buyer and collector.

10.   Defendant, Does 1-10 will be identified through discovery and the Complaint will be amended accordingly.

11.   At all times pertinent hereto, Defendants were acting by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

## BACKGROUND

12.   Plaintiff is unschooled in the legal arts and is a "least sophisticated consumer" as that term is defined and used in the Fair Debt Collection Practices Act.

13.   Defendants are highly trained and skilled in the legal arts. Defendants are the superior party in this dispute and enjoy exceptional legal resources tipping the balance of fairness against Plaintiff.

14.   It is nearly impossible to watch a television program without seeing an aggressive advertisement offering a credit card, many with enticements (air miles, low introductory interest rates, etc.) luring the viewer into accepting an offer from the credit card company to advance money or credit. The credit card issuer, many of whom are large money center banks, is the superior party offering a unilateral contract of adhesion to their unsuspecting victim.

15.   Each purchase the consumer makes is an installment sale; a separate and distinct transaction. Once the transaction is made, and where the cardholder timely reimburses the card issuer, the cardholder has no further obligation to the card issuer.

16.   The terms and conditions establishing the legal duty of the parties are found within the four corners of the Agreement. The terms and conditions are presented in such a fashion that

most cardholders either do not read the Agreement or their eyes glaze over before the end of the Agreement is reached with the reader giving up in total frustration.

17.     Even if the Agreement was read in its entirety, the material fact that the cardholder's debt was securitized was intentionally, knowingly and with forethought withheld by the card issuer, depriving the cardholder of the fundamental right to know the real party in interest or that securitization has caused the advancement of credit to be significantly more expensive to Plaintiff's detriment because each of many steps of the transaction is laced with fees that would not be present in an unsecuritized transaction.

18.     The card issuer, after securitization has been achieved, is a mere servicer, performing collection functions on a fee for service basis.  The card issuer is no longer the creditor, however an undisclosed third party investor is!

19.     The card issuer was in want of a person to sign or otherwise assent to the inherently deceptive and fraudulent Agreement so that the card issuer could bundle the cardholder's purported obligation with others who were likewise deceived and sell the bundle or pool of cash flows to investors by and through a complex matrix of bankruptcy remote entities with the aid and complicity of Wall Street.

20.     Securitization is controlled by a Pooling and Servicing Agreement (PSA), the terms of which are explicit and precise.  Failure to follow the PSA is not only tantamount to securities fraud, but such failure nullifies the debt.

21.     After a cardholder's debt is securitized, the card issuer is paid the credit or money advanced and is able to repeat the process with other unsuspecting consumers all of whom are equally unsophisticated, unaware and fully qualify as least sophisticated consumers.

22.     The deceptive acts and practices have another sinister side, which is that the investors to whom the cash flow mentioned above is sold is also caught a web of deception.  The investors

are led to believe that the cash flow is safe, where extensive due diligence has been done to protect against default. The truth is that the issuer will sign up anyone willing to assent to their fraudulent Agreement, which is in its very essence identity theft.

23.    If and when the consumer stops paying, the issuer is not the creditor in a default because the issuer no longer owns the debt. The debt has long ago been sold. <u>The card issuer is a stranger to the default respecting the card issuer!</u>

24.    Cardholders and investors alike are damaged because the Agreement is misrepresented from the get go and so effectively hidden that neither knows the identity of the other. Card issuers know of the material misrepresentation and depend on the cardholder's reliance of same and ultimately acting on the misrepresentation. Massive amounts of money are made by the card issuers on the backs of the cardholders and investors, who, if they had of known of the scheme, would have chosen to run, not walk.

25.    The credit card debt collection industry is similar in many respects to the mortgage foreclosure industry. Both industries aggregate customer loans into pools that are then sold to investors. Securitization in both of these industries was conceived by Wall Street investment bankers who lobbied for and received preferential legislation in repealing the Glass-Steagall Act. Thereafter, it was like kids in a candy shop. Enormous amounts of money were made by Wall Street investors and banks in an orgy to make more and more money…all to the detriment of the American public. Both industries have ugly well documented instances of intrinsic and extrinsic fraud, fraud on the Court, abuse of legal process, forgery, counterfeiting, perjury and other miscreant behavior. All of these events memorialized in the public domain by way of court transcripts, depositions and articles by major media. Responsible and competent jurists cannot morally or legally ignore the carnage being reported each day or in the case subjudice. Nor can

the Courts give money center banks and their ilk a pass when the rules require they prove their case by a preponderance of the evidence…competent evidence that is!

26.     The judiciary must serve as the gatekeeper, but in all too many instances, judges are either over worked, incompetent or just do not care, rendering decisions where they have shown no fidelity to their oath, judicial canons, rules of procedure and rules of evidence.  As a result, the miscreant behavior thrives because debt collectors can get away with unspeakable acts without fear of significant sanction.

## STATEMENT OF FACTS COMMON TO ALL COUNTS

27.     Plaintiff applied for and was accepted for a credit card with MBNA America Bank, N.A., hereinafter "MBNA," on or about May 19, 2004.

28.     On or about August 15, 2004, Plaintiff received a dunning letter from non-party WOLPOFF AND ABRAMSON, LLP[1], hereinafter "W&A," dated August 11, 2004 demanding Plaintiff pay $36,873.60 forthwith.  **See Exhibit 1**.

29.     On or about May 13, 2005, Plaintiff received a copy of a Notice of Claim, which was filed by W&A with non-party NATIONAL ARBITRATION FORUM, hereinafter "NAF".  **See Exhibit 2**.

30.     On or about May 31, 2005, Plaintiff filed a most inartful Notice of Objection to the Arbitration Claim, disputing the amount claimed to be owed, disputing the existence of an arbitration agreement authorizing NAF to arbitrate the claim and disputing forum fairness.  **See Exhibit 3**.

31.     Despite Plaintiff's clear and unambiguous dispute, NAF moved forward with a deceptive and illegal arbitration in want of jurisdiction.  **See Exhibit 4**.

---

[1] In late 2008 Wolpoff and Abramson merged with two other collections law firms: Mann-Bracken LLC (Atlanta, GA) that proclaims it "pioneered" the use of arbitration in collection attempts, and Eskanos and Adler, P.C. (Concord, CA). The new name of this entity is Mann Bracken.

32.	The Minnesota Attorney General was instrumental in exposing NAF's deceptive acts and practices, which action led to the demise of NAF on July 24, 2009. **See Exhibit 5**.

33.	NAF issued an UNDATED arbitration award in favor of MBNA and against Plaintiff. **See Exhibit 6**.

34.	On December 14, 2005 EDMONDS then filed, under case number C05-113, an application to District Court of the Fifth Judicial District of and for Hot Springs County, Wyoming to confirm the arbitration award. **See Exhibit 7**.

35.	On April 26, 2006, EDMONDS failed, refused or neglected to appear to confirm the arbitration award and the Court dismissed the case. **See Exhibit 8**.

36.	On June 5, 2006, Defendant EDMONDS filed, by and through Defendant CLC, on behalf of EDMONDS purported client, MBNA, a Complaint, cause number C06-56.

## FIRST CAUSE OF ACTION
Fair Debt Collection Practices Act, 15 U.S.C. 1692 et seq.
(Against All Defendants)

37.	Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

38.	Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

39.	The acts and omissions of Defendants involved transactions which were primarily for personal, family or household use.

40.	The Complaint referenced above was to collect an alleged "debt" as that term is defined by 15 U.S.C. §1692a(5). **See Exhibit 9**.

41.	Defendant EDMONDS is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), who represented an purported creditor, MBNA, as that term is defined by 15 U.S.C. § 1692a(4).

42.    Defendant RUSSELL is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

43.    Defendant CLC is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

44.    Defendant EDMONDS failed or refused to provide advance Notice of the lawsuit referenced in Paragraph 34 above or afford Plaintiff an opportunity to request debt validation.

45.    Defendants or their agents caused multiple "communications," as that term is defined by 15 U.S.C § 1692a(2), to be sent to Plaintiff.

46.    The first communication was a dunning letter, referenced in Paragraph 28 above, sent by nonparty W&A to Plaintiff demanding payment of an amount certain.

47.    The second communication was the Complaint referenced above and myriad other papers, such as motions, followed.

48.    Plaintiff, upon information and belief, alleges non-party MBNA sold the debt through a scheme of securitization where MBNA was properly paid in full before the filing of Defendant's Complaint.  As a result MBNA, in whatever permutation Defendants might choose, was not a party in interest or a creditor entitled to payment.   Instead, MBNA was a stranger to the transaction.

49.    Plaintiff, upon information and belief, alleges non-party MBNA did not own Plaintiff's debt at the time the Complaint was filed.

50.    Plaintiff, upon information and belief, alleges non-party MBNA, in addition to getting paid for the debt through the securitization scheme, fraudulently sold Plaintiff's account - yes, a second time - title to which MBNA did not possess, for pennies on the dollar to Defendants directly, or indirectly, through a debt wholesaler, such as Collins Financial in Austin, Texas.  See www.cfsi.net.

51.     Plaintiff, upon information and belief, alleges Defendants knew or should have known that MBNA did not own Plaintiff's debt, nor was MBNA the proper party when Defendant EDMONDS launched the Complaint.  Plaintiff owed MBNA nothing then or now.

52.     Plaintiff, upon information and belief, alleges, and will prove at trial, Defendant violated numerous provisions of the FDCPA, including by not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(5), 1692e(7), 1692e(10) and 1692f, 1692f(1) among others, to wit:

a.  By causing Plaintiff shock and alarm by sending a letter through the U.S. mail to abuse and harass the Plaintiff in violation of 15 U.S.C. §§ 1692d, and 1692f.

b.  By making false, deceptive or misleading statements to Plaintiff in connection with a consumer debt alleged due, in violation of 15 U.S.C. § 1692e and § 1692e(10).

c.  By attempting to collect from Plaintiff an amount not authorized by agreement in violation of 15 U.S.C. § 1692f(1).

d.  By providing false credit information and failing to communicate that a debt is disputed to the credit bureau in violation of 15 U.S.C. § 1692e(8) with respect to Plaintiff.

e.  Falsely represented the character, amount, or legal status of the debt to Plaintiff in violation of 15 U.S.C. § 1692e(2)(A).

f.  Defendants violated 15 U.S.C. § 1692g(b) by failing to provide verification of the debt and continuing its debt collection efforts after the Plaintiff had disputed the debt in writing within thirty days of receiving notice of the 15 U.S.C. § 1692g debt validation rights.

53.    As a result of Defendants' failure to comply with FDCPA and violations thereof, Plaintiff

has suffered and continues to suffer damages and costs of suit. Plaintiff is entitled to recover

statutory damages of $1,000.00, actual damages in an amount to be determined at trial, and costs.

### SECOND CAUSE OF ACTION
Racketeer Influenced and Corrupt Organization (RICO) Act, 18 U.S.C. 1961 et seq.
(Against All Defendants)

54.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully

set forth herein.

55.    Defendants EDMONDS and RUSSELL are "persons" as that term is defined at 18 U.S.C.

§ 1961(3).

56.    Defendants CLC is an "enterprise" as that term is defined at 18 U.S.C. § 1961(4).

57.    WOLPOFF AND ABRAMSON (W&A) was well known for its abusive collection

practices and incestuous relationship with National Arbitration Forum (NAF).

58.    The way it worked, and as here, W&A bought huge amounts of debt, directly from credit

card companies or from re-sellers and then filed an arbitration claim with NAF against each of

the debtors, a fate suffered by a huge number of other Americans.  NAF is equally well known

for its abusive practices and ultimately closed on July 20, 2009.  See Paragraph 32 above.

59.    After NAF "processed" a claim, thereafter an award[2] was rendered in favor of the

purported creditor in over 95% of cases.  W&A would then sell the debt to an attorney firm

located or licensed in the same state as the debtor.  W&A sold the purported debt of Plaintiff to

Defendant CLC on or about February 15, 2005.  Defendant EDMONDS, a Defendant CLC

employee, acquired Plaintiff's file and the responsibility to collect.  Defendant EDMONDS

attempted to have the arbitration award confirmed, Case # C05-113, on or about December 14,

2005 in the District Court of the Fifth Judicial District of and for Hot Springs County, Wyoming.

---

[2] In over 95% of the cases the award would be in favor of the creditor.

60.     The Court dismissed the Motion to Confirm Arbitration Award for failure of EDMONDS to appear as shown in Paragraph 35 above.   Subsequently, Defendant EDMONDS filed a Complaint, on or about June 5, 2006, styled as MBNA AMERICA BANK V. CATHY L. LANCE, Case # C06-56.

61.     The entity, MBNA America Bank, did not exist at the time of the Complaint for two reasons.   First, there is no such entity as MBNA America Bank.   The Complainant may have intended to designate MBNA America Bank, N.A. as Plaintiff, but nonetheless styled the case in the name of MBNA America Bank, a nonexistent entity.   Second, MBNA America Bank, N.A. did not exist at the time the Complaint was filed because it was purchased by Bank of America on June 30, 2005, nearly a year BEFORE the Complaint was filed.   Assuming arguendo MBNA America Bank, N.A. did at one time own the debt, and it did not, MBNA America Bank, N.A. had a policy and practice of quickly securitizing the debt of Plaintiff and others similarly situated.   **See Exhibit 10 & 11**.

62.     Plaintiff alleges MBNA, within only days of opening Plaintiff's account, or a month at most, was paid in full when the debt was securitized.   The new owner and creditor became the investor(s) who purchased the debt.   MBNA America Bank, N.A. or MBNA America Bank was not the owner of the debt at the time the Complaint was filed.

63.     Not only was Plaintiff not the owner of the debt, but the Court lacked jurisdiction to hear the case for at least two reasons.   First, the statutory limit of the District Court of the Fifth Judicial District was, at the time the Complaint was filed, a MAXIMUM of $7,000.00.   The amount claimed in EDMONDS' Complaint exceeded $45,000.   The judgment issued from District Court of the Fifth Judicial District was and is a nullity as a matter of law, a defect that cannot be repaired.

64.     Second, In *Wachovia Bank, N. A. v. Schmidt*, 546 U.S. 303, 126 S. Ct. 941, 163 L. Ed. 2d 797 (S.Ct., 2006), the Court held, "[U]nder 28 U.S.C. § 1332(c)(1), a corporation is "deemed to be a citizen" only of "any State by which it has been incorporated" and "of the State where it has its principal place of business." The District Court of the Fifth Judicial District was in want of subject matter jurisdiction and for that reason the judgment that issued was a nullity as a matter of law and cannot be repaired. MBNA was not incorporated in Wyoming, nor does MBNA have its principal place of business in Wyoming.

65.     Only recently has Plaintiff become aware of the swindle detailed in this Complaint. Until then, Plaintiff relied on what Plaintiff believed was good faith and fair dealing on the part of Defendants, a superior party in knowledge, experience in law and financial resources. Plaintiff has discovered that greed, arrogance and official misconduct has undermined good behavior and morality.

66.     Defendants visited a scheme of trickery detailed in this Complaint herein upon Plaintiff for the purpose of illegally taking money and property from Plaintiff by way of deception, misrepresentation and omission. Defendants knew and intended to make a sizeable profit at the expense of Plaintiff by buying the debt for pennies on the dollar and then collecting the purported amount due PLUS fraudulent fees. Defendants further knew Plaintiff would and did rely on Defendants material deception to Plaintiff's detriment.

67.     It is in role of debt buyer and debt collector Plaintiff alleges CLC, the manager or operator of the enterprise, through employee and Defendant EDMONDS and RUSSELL has with specific intent, from their location at 402 6th Street, Rawlings, Wyoming, falsely claimed Plaintiff owes a debt to MBNA America Bank and then collected such false debt.

68.     Plaintiff has standing to bring this suit because Plaintiff has sustained and endured continuing and related pecuniary injury by reason of Defendant CLC, an enterprise, its owner

and operator GERALD K. RUSSELL, a person, and its employee attorney Defendant EDMONDS, a person, wrongfully claiming and collecting a false and fictitious debt affecting interstate commerce by and through the U.S. Mail and illegal Court sanctioned garnishments to swindle Plaintiff's compensation in a pattern of racketeering activity.

69.     RUSSELL knew or should have known the deception contrived by EDMONDS. Defendants were, and still are, engaged in an open-ended criminal scheme of deception by extorting money (illegal garnishments) from Plaintiff that began on or about September 10, 2007, continues to this day and is expected to go well into the future until the bogus debt is paid or judicially corrected.

70.     Defendants violated 18 U.S.C. § 1962(c) & (d), which renders it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt," Or, "to conspire to violate the provisions of § 1962(c)."

71.     Defendants through a scheme or artifice committed 1) mail fraud, 2) wire fraud, and 3) bank fraud, in violation of 18 U.S.C. §§ 1341, 1343 and 1344(2) respectively, by claiming and collecting a debt, which is not now nor was it ever due and owing MBNA America Bank.

72.     Mail and wire fraud occurs when, as here, Defendants sent false utterances through the mail and over the wire. Bank fraud occurs when, as here, Defendants conspired and contrived a scheme to defraud enabling the perpetrator to obtain funds "under the control and custody of a bank." Each predicate act of bank fraud coincides with each predicate act of mail and wire fraud.

73.    The systematic victimization of Plaintiff consists of the predicate acts, which occurred as shown in the Court's Garnishment Payment Record, listing the dates and amount. **See Exhibit 12.**

74.    Defendants EDMONDS and CLC have engaged in a "pattern of racketeering activity" as that term is defined at 18 U.S.C. 1961(5) by committing more than two acts within a ten year period of racketeering activity as follows:

   a.    Defendants conspired to commit acts of mail fraud, wire fraud and bank fraud indictable under § 18 U.S.C. 1341, 1343 and 1344(2) by using the U.S. Mail to claim and collect a debt, which Plaintiff did not owe and using the judiciary to assist in the collection thereof. Each of many predicate acts appear in the case record as serial garnishments, beginning November of 2007 and continuing to the present time.

   b.    Defendants willfully with knowledge and intent have wrongfully taken property by using the mail and wire from Plaintiff by and through a worthless judgment, and to make it worse, without proving up damages,

   c.    Defendants used the wrongful judgment to apply to the Court for Writ of Garnishment.

75.    By reason of the Defendants' violation of 18 U.S.C.A. § 1962, Plaintiff is entitled, pursuant to 18 U.S.C.A. § 1964(c), to threefold the damages sustained, costs of suit, and reasonable attorney's fees.

**THIRD CAUSE OF ACTION**
Violation of W.S. 1-15-502
(Against All Defendants)

76.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully

set forth herein.

77.    W.S. 1-15-502(b) states the following:

> Subject to the provisions of W.S. 1-15-504, garnishment pursuant to
> subsection (a) of this section shall be a lien and continuing levy against
> said earnings due until such time as the employment relationship is
> terminated, the underlying judgment is vacated, modified or satisfied in
> full, the writ is dismissed, or ninety (90) days have expired since service
> of the writ, whichever is sooner. A continuing garnishment may be
> suspended for a specified period of time by the judgment creditor upon
> agreement with the judgment debtor. The agreement shall be in writing
> and filed by the judgment creditor with the clerk of the court in which the
> judgment was entered and a copy of the agreement shall be delivered by
> the judgment creditor to the garnishee. [Emphasis added]

78.    Defendants failed or refused to obtain from the Court the requisite Writ of Garnishment

as shown in the Court Docket in all but a handful (three or less) of garnishments therefore

violating W.S. 1-15-502. **See Exhibit 13**. All other garnishments were well outside of the

statutory 90 day limitation and therefore illegal.

79.    Defendants' acts require all illegal garnishments to be returned to Plaintiff with statutory

interest and all derogatory entries at any of the three credit bureaus be expunged.

**FOURTH CAUSE OF ACTION**
Fraud On The Court
(Against All Defendants)

80.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully

set forth herein.

81.    In the U.S., when an officer of the court is found to have made a representation of facts to

court that are false, as here, so that the court is impaired in the impartial performance of its legal

task, the act, is known as "fraud upon the court", and is a crime deemed so severe and fundamentally opposed to the operation of justice that it is not subject to any statute of limitation.

82.     Officers of the court include: Lawyers, Judges, Referees, and those appointed; Guardian Ad Litem, Parenting Time Expeditors, Mediators, Rule 114 Neutrals, Evaluators, Administrators, special appointees, and any others whose influence are part of the judicial mechanism.

83.     "Fraud upon the court" has been defined by the 7th Circuit Court of Appeals to "embrace that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Kenner v. C.I.R.*, 387 F.3d 689 (1968); *7 Moore's Federal Practice, 2d ed.*, p. 512, ¶ 60.23

84.     In *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985), the court stated "Fraud upon the court is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury. It is where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function --- thus where the impartial functions of the court have been directly corrupted."

85.     Defendants did misrepresent material facts, or purposely fail to disclose material facts in prosecution and collection of debt. Defendants claimed Plaintiff owed MBNA America Bank an amount certain. The claim was false and Defendants knew the claim was false or with utter disregard and recklessness as to whether such representations were true or false that knowledge may be inferred. Defendants intended Plaintiff and the Court to rely on the falsity.

86.     The Court and Plaintiff relied on the misrepresentations and omissions to Court's and Plaintiff's ultimate detriment, the Court and Plaintiff having no knowledge at the time the suit was commenced that the misrepresentations and omissions were false.

87.     Defendants EDMONDS' and RUSSELL'S misrepresentations were made with the intent of misleading the Court and Plaintiff into relying on them.

88.     The Court and Plaintiff justifiably relied upon the misrepresentations made by Defendants EDMONDS and RUSSELL to inflict damage to the Court machinery and to Plaintiff's detriment, as well.

89.     Defendants EDMONDS' and RUSSELL'S misrepresentations were wanton and reckless.

90.     Due to Defendants EDMONDS' and RUSSELL'S fraud, misrepresentations and omissions Plaintiff has been damaged in an amount in excess of One Hundred Thousand Dollars ($100,000).

## TRIAL BY JURY

Plaintiff is entitled to and hereby respectfully demands a trial by jury.  U.S. Constitution, Amendment 7.  See also FRCP 38.

## CONCLUSION

The Internet is replete with instances of debt collector's abusive and miscreant behavior. Such behavior must be stopped and this Court is in a position to apply sanctions sufficient that Defendants' amend their bad behavior.  Defendants' conduct was a direct and proximate cause, as well as a substantial factor, in bringing about injuries, damages and harm to Plaintiff that are explained herein and as a result, Plaintiff has suffered ascertainable losses entitling Plaintiff to an award of statutory, actual and treble damages, litigation fees and costs, as well as other relief, permitted under the law.

## RELIEF SOUGHT

WHEREFORE, Plaintiff respectfully seeks judgment in an amount over $100,000 in Plaintiff's favor and damages against the Defendants, based on the following requested relief:

a.      Actual damages;

    b.        Statutory damages pursuant to 15 U.S.C. § 1692k;

    c.        Punitive damages in the Court's sole discretion;

    d.        Costs pursuant to 15 U.S.C. §§ 1681n, and 1681o; and

    e.        Such other and further relief as may be necessary, just and proper.

Prepared and signed on 10/31/11     by:

_Cathy Lance_

Cathy Lance
4006 Inverness Ct.
Riverton, WY 82501
307-463-2064
rlance@bresnan.net

## VERIFICATION

I, Cathy Lance, of legal age and competent to testify, verify under penalty of perjury that the factual averments in the above and foregoing petition, complaint, and claim are truthful and accurate to the best of my knowledge and all documents verifying my claims are now in my possession. This action is well grounded in fact and warranted by existing law and in full and complete compliance with FRCP, Rule 11(a) and (b).  I declare under the penalty of perjury under the laws of the State of WY that the foregoing is true and correct.

_Cathy Lance_
Cathy Lance
4006 Inverness Ct.
Riverton, WY  82501
(307) 463-2064

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF WYOMING

COUNTY OF PARK COUNTY

Before me, the undersigned, a Notary Public in and for said County and State on _Oct 31st 2011_ , personally appeared Cathy Lance to me known to be the identical person who executed the within and foregoing instrument and acknowledged to me that he executed the same as his free and voluntary act.

Given under my hand and seal the day and year last above written.

My commission expires: _10-12-2013_

_____ Notary Public

Annette Hunt - Notary Public
County of Fremont
State of Wyoming
My Commission Expires Oct. 12, 2013