**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2012 AUG 13  PM 2 30

STEPHAN HARRIS, CLERK
CASPER

CATHY L. LANCE,                    )
                                   )        Case No.: 11CV359S
              Plaintiff,           )
                                   )
vs.                                )
                                   )        PLAINTIFF'S OBJECTION AND
ROCKY L. EDMONDS ATTORNEY AT       )        OPPOSITION TO DEFENDANT'S MOTION
LAW; ROCKY L. EDMONDS, individually, )      FOR SUMMARY JUDGMENT
COLLECTION LAW CENTER, P.C.,       )
GERALD K. RUSSELL, President, GERALD )                    AND
K. RUSSELL, individually,  and DOES 1-10; )
                                   )        PLAINTIFF'S COUNTER-MOTION FOR
              Defendants.          )        PARTIAL SUMMARY JUDGMENT
                                   )
                                   )

## INTRODUCTION

1.     Plaintiff reaffirms the Complaint with all exhibits and incorporates the document as if
fully set forth herein.

2.     This is an action for damages brought by an individual consumer, Plaintiff, for
Defendants' violations, *inter alia*, of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692,
et seq. (hereinafter ''FDCPA'') plead in harmony with violations of the Racketeer Influenced
and Corrupt Organizations (RICO) Act, 18 U.S.C. 1962 et seq.

## STATEMENT OF FACTS

3.     Plaintiff is Cathy L. Lance; defendants are Rocky L. Edmonds, Attorney, Rocky L.
Edmonds, individually, Collection Law Center, P.C., Gerald K. Russell, CLC President, and
Gerald K. Russell, individually.

4.    On January 23, 2012 plaintiff served on Defendants a Complaint with the following causes of action:

    a.   Fair Debt Collection Practices Act violations

    b.   Racketeering Influenced Corrupt Organizations (RICO) Act violations

    c.   W.S. 1-15-502 violations

    d.   Fraud on the Court

5.    Defendants served on Plaintiff their Answer and Affirmative Defenses on March 14, 2012.

6.    On or about March 19, 2012 Plaintiff served on Defendants, Plaintiff's First Discovery Requests

7.    On or about April 23, 2012 Plaintiff received Defendants' discovery responses.

8.    On or about June 18, 2012 Plaintiff sent a Meet and Confer Letter to Defendants.

9.    On or about June 26, 2012, Plaintiff received a letter unresponsive to Plaintiff's Meet and Confer Letter. Law and Argument

10.    On or about July 30,2012, Plaintiff received Defendants' FRCP, Rule 56 Motion for Summary Judgment.

## PLAINTIFF'S OBJECTION AND OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff squarely objects and opposes Defendants' FRCP, Rule 56 Motion for Summary Judgment and files this timely Opposition in response.  Pursuant to FRCP, Rule 56(d), when the nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the Court may: 1) defer considering the motion, 2) allow time to obtain affidavits or declarations or to take discovery, or 3) issue any other appropriate order. Movant is in possession of two documents essential to nonmovant's case, to wit: 1) an

3

authenticated copy of the cardholder agreement i) affirmatively identifying Plaintiff and ii) establishing the legal duty, and 2) an authenticated copy of the limited power of attorney and fee-for-service Agreement (together with deposit records) between the putative creditor, MBNA, and the debt collection firm, Collection Law Center (CLC).   Both items were requested in discovery and neither item was produced.   See Interrogatories No. 14, Requests for Admissions No. 1, and Requests for Production of Documents No. 7.   Exhibit A.   Therefore, nonmovant requests the Court's assistance in procuring same.

## LEGAL STANDARD

11.     The standard for a summary judgment and the plenary review of it are well established and should be well known.   See *Le-Jeune v. Shell Oil Co.*, 950 F.2d 267, 268 (5th Cir.1992).

12.     Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).   "[T]he substantive law will identify which facts are material". Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)."   [A] dispute about a material fact is `genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party". Id. at 248, 106 S.Ct. at 2510; see *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

13.     The movant has the initial burden of demonstrating the absence of a material fact issue. *St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279-80 & n. 6 (5th Cir.1991).   If it satisfies that burden, the non-movant must identify specific evidence in the summary judgment record demonstrating that there is a material fact issue concerning the essential elements of its

case for which it will bear the burden of proof at trial. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

14.     Needless to say, unsubstantiated assertions are not competent summary judgment evidence. *Id.* at 324, 106 S.Ct. at 2553.

15.     "A material fact is one that affects the outcome of the case." *Sender v. Powell*, 902 P.2d 947 (Colo. App. 1995).

16.     "Supporting affidavits submitted by the moving party, however, may be insufficient to satisfy his burden." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1972); *Benton-Volvo-Metairie, Inc. v. Volvo Southwest Inc.*, 479 F.2d 135 (5th Cir. 1973.

## LAW AND ARGUMENT

17.     <u>Background</u>

        a.      Plaintiff is not learned in the legal arts and has struggled with copious rules, as well as their context and syntax.  Further, Plaintiff lacks financial resources to engage the help needed.  As a result, Plaintiff is a self-study and pushed forward on her own using maximum diligence.  Plaintiff fully qualifies as a least sophisticated consumer.

        b.      Plaintiff was blamelessly ignorant of the corruption in the debt collection racket until Plaintiff began to study the subject roughly ten months before filing this suit.  See Complaint ¶ 65.  The study was prompted by viewing Maxed Out, directed by James D. Scurlock (see www.maxedoutmovie.com), a movie that exposes the deceit and dishonesty in a shocking and outrageous predatory collection industry.  The movie was the compelling impetus behind a diligent inquiry into the circumstances surrounding Plaintiff's collision with debt collectors to understand consumer protection laws, securitization, and the collection industry generally.  Prior to the viewing the movie, Plaintiff did not even know the words "arbitration," "securitization" or

their meaning.  The learning process was akin to drinking from a fire hose!  Plaintiff diligently

searched law archives, and read copious cases on FindLaw, Leagle, LoisLaw and Google

Scholar.  Plaintiff also attended webinars by a debt collection attorney and debtor advocate to

understand the depth and scope of the misbehavior in the industry.  It was not until a thorough

study did Plaintiff become aware she had been injured by Defendants.  Until that time, Plaintiff

assumed Defendant to be honorable and acting in good faith.  Neither was true.  Plaintiff learned

that non-party MBNA America Bank did not own the debt, nor did MBNA America Bank even

exist for that matter and Defendants with scienter advanced a claim which had, at the very least,

no basis in fact and, at worst was an outright fraud concealing the facts to Plaintiff's ultimate

detriment.  Plaintiff also studied the state rules to learn jurisdictional limits of the courts.  To her

amazement, Plaintiff learned that the court in which case #06-56 was heard exceeded the

jurisdictional limits, to wit: The amount of the claim exceeded the amount which could be

lawfully heard in the Circuit Court.  The jurisdictional limit was $7,000 at the time of the suit

and the limit was not changed until March of 2011.  See Exhibit B. The amount claimed was

over five times ($36,000) the jurisdictional limit.  The judgment was a nullity.  Void judgments

have no statute of limitations.  Subject matter jurisdiction, unlike personal jurisdiction, cannot be

waived.

      c.     The pivotal issues at the epicenter of this dispute are the following: 1) MBNA did

not own the debt at the time of the suit because i) MBNA had merged with Bank of America

fully one year before Defendant launched their suit, meaning that the acquiring entity would be

the rightful Plaintiff in a collection action, and ii) MBNA sold Lance's debt in a securitization

scheme, meaning the successor in interest would have been the buyer and rightful owner of the

debt, not MBNA. 2) Defendants did not represent MBNA, instead Defendants bought the debt and deceptively held themselves out as an attorney in fact for MBNA.

18.   Debt Validation

a.   Plaintiff did request validation, albeit awkwardly, in Plaintiff's May 31, 2005 correspondence titled Objection to Arbitration. See ¶ 4 & 7.  The correspondence was totally ignored and Plaintiff felt she had been slam-dunked, not even receiving the courtesy of a response… other than an award for MBNA and against Lance.

b.   Non-parties National Arbitration Forum[1] and Wolpoff & Abramson are known conspirators in the debt collection racket.  See Complaint ¶ 32 & 57.

19.   FDCPA

a.   Statute of Limitations

i.   Plaintiff did not learn of the wrongdoings of Defendant until ten months ago.  Plaintiff did not know that non-party MBNA did not own the debt.  Plaintiff did not know that Defendants initiated a suit in the name of a non-existent entity. Plaintiff did not know that a court had jurisdictional limits.   Plaintiff did not know that these items and others, both separately and collectively, violate several aspects of the FDCPA as shown in Plaintiff's Complaint.

ii.   The FDCPA statute of limitations is affected by the same doctrines as is RICO, with respect to injury accrual, discovery accrual and continuing violations. Plaintiff did not discover the injury until less than one year ago and then undertook an aggressive and diligent study, detailed above, to bring forward a suit to seek relief.

      iii.     The garnishments continued until February 2012. As a consequence, Plaintiff's FDCP cause of action is not barred by the statute of limitations and Defendants' Motion must be denied.

20.   <u>RICO</u>.

    a.    Statute of Limitations

        i.     RICO Act legislation did not and does not contain a Statute of Limitations. Instead by a giant leap into the realm of legislative judgments the four year limit found in the Clayton Act was adopted (borrowed), to the consternation of Justice Scalia in *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 US 143 - Supreme Court 1987. In an April 2012 case, Judge Posner draws a distinction in *Limestone Development Corp. v. Village of Lemont*, 473 F. Supp. 2d 858 - Dist. Court, ND Illinois 2007 between the discovery rule, which determines when the limitations begins, and the continuing violation doctrine, which governs the period of time for which damages may be recovered. The two principles operate in tandem: ordinarily, if a discrete act occurs, in the case of RICO violation, one has four years from the occurrence of that act to bring suit or else all claims are barred. There is a split on the courts about whether the limitations period runs from the date the infringement occurs (injury accrual) or the date from which a reasonable person would have discovered the infringement (discovery accrual), but the continuing violation doctrine rides on top of either: if the infringement is a continuous one, as here, suit may be

---

[1] Wholly owned by Wolpoff and Abramson

brought anytime within four years from the date an ongoing infringement finally stops. Damages may be recovered only four years back.

ii.     The continuing violation doctrine applies to Plaintiff's RICO claim.

iii.    Garnishments continued until February 2012. As a consequence, Plaintiff's RICO cause of action is not barred by the statute of limitations and Defendant's Motion must be denied.

iv.     Further Defendants Edmonds, Russell and perhaps others undertook to hide the facts 1) that MBNA America Bank was not the proper party, 2) that Plaintiff owed MBNA America Bank nothing, 3) despite the foregoing knowledge, Defendants intentional sought and received summary judgment against Plaintiff, and 4) Defendants knowingly and wrongfully took property from Lance by perpetrating fraud on the Court. Fraudulent conspiracy, as here, tolls the statute of limitations.

v.      For the reasons above, Defendants' Motion for Summary Judgment must be denied.

b.   Enterprise

i.      Section 1964(c) grants a private right of action to any person "injured in his business or property by reason of a violation of section 1962." Section 1962, in turn, makes it unlawful to invest, in an enterprise engaged in interstate commerce, funds "derived . . . from a pattern of racketeering activity," to acquire or operate an interest in any such enterprise through "a pattern of racketeering activity," or to conduct or participate in the conduct of that enterprise "through a pattern of racketeering activity." Section 1961 defines "racketeering activity" to

mean any of numerous acts "chargeable" or "indictable" under enumerated state and federal laws, including state-law murder, arson, and bribery statutes, federal mail and wire fraud statutes, and the antifraud provisions of federal securities laws. It states that "a pattern" of racketeering activity requires proof of at least two acts of racketeering within 10 years.

ii.      By its terms, § 1964(c) therefore grants a cause of action only to a person injured "by reason of a violation of § 1962." The only injury a plaintiff need allege is injury occurring by reason of a predicate, or racketeering, act — i. e., one of the offenses listed in § 1961.

iii.      The term "enterprise" is defined as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." § 1961 (4).

iv.      CLC is an enterprise within the meaning of the RICO statute because CLC is legal entity or group of individuals associated in fact.

v.      Plaintiff successfully alleged CLC to be an enterprise.   Defendants' assertion to the contrary fails.

c.      <u>Common Purpose</u>

i.      Plaintiff has sufficiently alleged that defendants Edmonds and Russell together with CLC have associated for "a common purpose of engaging in a course of conduct." The conduct is fraudulent debt collection to further their common goal of earning ill-gotten profits in furtherance of their scheme or artifice to defraud. See Complaint ¶ 66.

ii.      These allegations are more than adequate to establish a common purpose.

10

d.   Ongoing organization

   i.   Plaintiff sufficiently alleged an "ongoing organization," either "formal or
   informal." *United States v. Turkette*, 452 US 576 - Supreme Court 1981.  See
   Complaint ¶ 52f.

   ii.   An ongoing organization is "a vehicle for the commission of two or more
   predicate crimes." *United States of America v. Cagnina*, 697 F.2d at 921-22
   (internal quotation marks omitted) (quoting *United States v. Elliott*, 571 F.2d 880,
   898 (5th Cir.1978)).

   iii.   Defendants Edmonds and Russell formed a vehicle, CLC, for the
   commission of at least two, actually many, predicate acts of fraud, the series of
   garnishments from June 2007 to February 2012. *See United States v. Qaoud*, 777
   F.2d 1105, 1117 (6th Cir.1985) (stating that "coordinated nature" of defendants'
   activity supported a finding of a RICO enterprise).

   iv.   Defendants could have stopped the garnishments at any time and refunded
   Plaintiff's money with statutory interest, but did not.

e.   Continuing unit

   i.   Plaintiff has alleged facts that, if proved, provide sufficient "evidence that
   the various associates function as a continuing unit." *United States v. Turkette*,
   452 US 576 - Supreme Court 1981. The continuity requirement does not, in itself,
   require that every member "be involved in each of the underlying acts of
   racketeering, or that the predicate acts be interrelated in any way." *United States
   v. Qaoud*, 777 F. 2d 1105 - Court of Appeals, 6th Circuit 1985. Instead, the

11

continuity requirement focuses on whether the associates' behavior was "ongoing" rather than isolated activity. *Patrick*, 248 F.3d at 19.

ii.     Roughly four years of continuing garnishments is far more than adequate to establish that Defendants functioned as a continuing unit.

f.     FRCP, Rule 9 – Particularity

i.     Plaintiff exerted great effort and placed great importance on detailing the RICO cause of action to identify 1) **who** 2) did **what** 3) to whom, 4) **when** did they do it, 5) **where** did they do it, 6) **how** did they do it, 7) what **law** was violated, and 8) what **injury** resulted.

ii.     Defendants are content with making a conclusory allegation that the particularity prong was not satisfied.  Conspicuous by its absence is a reference or support to the ill-founded assertion.

iii.     "In all averments of fraud . . ., the circumstances constituting fraud . . . shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Rule 9(b) "requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir.1986) (internal quotation marks omitted) (quoting *Bosse v. Crowell Collier & Macmillan*, 565 F.2d 602, 611 (9th Cir. 1977)). "[T]he pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." Id. at 1401; see also *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th 554*554 Cir.1989)

          iv.     Plaintiff satisfied Rule 9 properly.  Defendants' Motion to Dismiss must be denied

21.    Defendants' Affidavit

      a.     Defendants' Affidavit is self-serving and totally unsupported.  Defendant Edmonds makes the following unsupported claims:

          i.     Collection Law Center, P.C., is not now, nor has it even been, the owner of any commercial or consumer debt, including any debt owed by Lance.

          ii.     At all times up to the filing of the present lawsuit, all of Collection Law Center's dealings with Lance have been undertaken in its role as attorneys for MBNA America Bank.

          iii.     From their referral of the collection matter to Collection Law Center to the present, MBNA America Bank has always represented to Collection Law Center that MBNA America Bank is the owner the debt at issue in this case.

      b.     None of the assertions above have a scintilla of support.  Affiant could have attached correspondence from their client.  Affiant did not.  Affiant could have attached a copy of an Engagement Letter, a copy of a limited power of attorney or a fee agreement.  Affiant did not.  The assertions are mere hearsay.

22.    Disputed Facts

      a.     Defendant cites to Plaintiff's Complaint ¶ 27 for the following text: "In May, 2004, Lance applied for and received a credit card from MBNA America Bank, N.A. (MBNA).  Defendants conveniently ignore ¶ 61 of Plaintiff's Complaint where Plaintiff alleges the styling of case #06-56 identifies a non-existent entity (MBNA America Bank, rather than MBNA America Bank, N.A.) and failed or refused to rebut Plaintiff's allegation.  Defendant's silence is either an

admission that case # 06-56 was brought improperly or, at the very least, a factual dispute exists. Defendants hope the Court will not notice the fatal disparity. Defendants continue their ruse by using the MBNA acronym to mean MBNA America Bank, N.A., when clearly the case did not comprehend such an entity. Accordingly, a dispute exists as to a material fact where case #06-56 was incorrectly styled and the putative judgment rendered to an entity that did not exist.

     b.    Even if the case was styled correctly, which it was clearly not, the entity, MBNA America Bank, N.A., merged with Bank of America June 30, 2005, an **ENTIRE YEAR BEFORE CASE # 06-56 WAS INITIATED**. Coincident with the merger, MBNA ceased to exist. Bank of America was the successor in interest. MBNA could not possibly be the proper party Plaintiff in any lawsuit at the time case #06-56 was brought. Defendants knew or should have known they cannot sue in the name of a nonexistent entity.

     c.    Even if the case was styled correctly AND MBNA had not merged with Bank of American, which is clearly not the case, MBNA, the Fifth Judicial Circuit Court lack jurisdiction because MBNA was not incorporated in Wyoming, nor does MBNA have its principal place of business in Wyoming. *Wachovia Bank, N. A. v. Schmidt*, 546 U.S. 303, 126 S. Ct. 941, 163 L. Ed. 2d 797 (S.Ct., 2006).

     d.    Defendants, in their Motion for Summary Judgment, Page 19, claim the following: "Lance's claim that CLC must return the garnishments is baseless. First, MBNA was the entity receiving the payments, not CLC. R. Edmonds Aff., ¶ 6." Defendants' claim is false and in keeping with other deception proffered by Defendants, intended to mislead Plaintiff and the Court. Plaintiff called the Clerk of Court. The Court stated that they issue checks to Rocky L. Edmonds, Collection Law Center, P.O. Box 1218, Fort Collins, CO 80522, which makes claim above false.

23.     Violation of W.S. 1-15-502.

a.     W.S. 1-15-502(b) states the following: "Subject to the provisions of W.S. 1-15-504, garnishment pursuant to subsection (a) of this section shall be a lien and continuing levy against said earnings due until such time as the employment relationship is terminated, the underlying judgment is vacated, modified or satisfied in full, the writ is dismissed, or **ninety (90) days** have expired since service of the writ, whichever is sooner. A continuing garnishment may be suspended for a specified period of time by the judgment creditor upon agreement with the judgment debtor. The agreement shall be in writing and filed by the judgment creditor with the clerk of the court in which the judgment was entered and a copy of the agreement shall be delivered by the judgment creditor to the garnishee." [Emphasis added]

b.     Defendants' nonsensical statement that Plaintiff must file a claim against the Garnishee because W.S. 1-15-502(b) was violated is incredulous.   CLC by and through Defendant Edmonds filed the Garnishment.   Edmonds has an express duty to follow the language in the statute.   The Garnishee is not culpable but instead is merely following the command of an officer of the court.

c.     Defendants made the following statement: "…MBNA was the entity receiving the payments, not CLC." The statement is conclusory without any support whatsoever. Plaintiff squarely challenges Defendants' assertion and demands strict proof.   A genuine dispute concerning a material fact exists.   Statements of counsel in their briefs or argument while enlightening to the Court are not sufficient for purposes of granting a motion to dismiss or summary judgment. Trinsey v. Pagliaro, D. C. Pa. 1964, 229 F. Supp. 647. See also *United States v. Lovasco* (06/09/77) 431 U.S. 783, 97 S. Ct. 2044, 52 L. Ed. 2d 752; *Gonzales v. Buist.* (04/01/12) 224 U.S. 126, 56 L. Ed. 693, 32 S. Ct. 46; *Holt v. United States,* (10/31/10) 218 U.S.

15

245, 54 L. Ed. 1021, 31 S. Ct. 2 and *Telephone Cases*, 126 U.S. 1, 31 L. Ed. 863, 8 S. Ct. 778.
"General allegations and conclusory statements are not sufficient." *Garnett v. Coyle*, 2001 WY
94, P24, 33 P.3d 114, P24 (Wyo. 2001).

      d.      Defendants make the following statement: "...CLC and MBNA fully complied
with all statutory provisions pertaining to garnishments in Wyoming, and Lance has no evidence
to the contrary."  Plaintiff disputes the statement and asserts a bevy of garnishments that
occurred without the proper Writ first being filed.  See Plaintiff's Complaint, Exhibit 13.  The
garnishments issued from a judgment that was void on its face for want of jurisdiction.

      e.      Garnishment impacts substantive rights.  Failure to strictly follow garnishment
statutes creates an implied private cause of action.  Federal Courts possess the inherent power to
imply private rights of action for statutory violations.  See *JI Case Co. v. Borak*, 377 US 426 -
Supreme Court 1964

      f.      The total of all garnishments are partially the basis for computing Plaintiff's
damages.

24.    <u>Fraud on the Court</u>

      a.      Plaintiff properly stated a claim against Defendants for fraud on the court.
Defendants did misrepresent material facts, or purposely fail to disclose material facts in
prosecution and collection of debt.  Defendants claimed Plaintiff owed MBNA America Bank an
amount certain.  The claim was false and Defendants knew the claim was false or with utter
disregard and recklessness as to whether such representations were true or false that knowledge
may be inferred.  Defendants intended Plaintiff and the Court to rely on the falsity.

b.     The Plaintiff relied on the misrepresentations and omissions to Plaintiff's ultimate detriment, the Plaintiff having no knowledge at the time the suit was commenced that the misrepresentations and omissions were false.

c.     Fraud on the court is sufficient reason to vacate a void judgment as the one here.

25.   Service of Process

a.     Plaintiff reaffirms its Response to the Court's Show Cause Order and by reference incorporates the Response as if fully set forth herein.

b.     Defendants are engaged in more deception and hide-n-seek.   They are not available for service, because they have chosen not to be.   Instead, they hide behind employees and claim service of process has not been perfected because the process server did not personally hand the Summons and Complaint to Defendants.   Plaintiffs gave fair, adequate and understandable explanation of the claim against Defendants, but Defendants chose to engage in game playing.

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## LR 7.1 CERTIFICATE OF COMPLIANCE

1.     Pursuant to LR 7.1, Cathy L. Lance hereby certifies that she conferred with Defendants'. Counsel and Defendants have been unable or unwilling to agree upon the issues raised in this motion.

## MOTION

2.     Pursuant to Fed. R. Civ. P., Rule 60(a)(4) and Rule 60(b)(3), Plaintiff timely moves this Court for a partial summary judgment, because case #06-56 is void on its face for the reasons below.  This motion is supported by Plaintiff's Memorandum of Law and Affidavit.

## MEMORANDUM OF LAW

3.      Plaintiff's Complaint alleged that the judgment rendered in case #06-56 is void on its face, a fact that Defendants knew or should have known.  The judgment was in want of judicial power, a deficiency (akin to subject matter jurisdiction) that cannot be cured or waived.  The jurisdictional limit imposed on the Fifth Judicial Circuit Court was $7,000 when case #06-56 was filed.  See Exhibit B.  The amount claimed was nearly five times that amount, a claim which was barred by statutory mandate.

4.      "A court may not render a judgment which transcends the limits of its authority, and a judgment is void if it is beyond the powers granted to the court by the law of its organization, even where the court has jurisdiction over the parties and the subject matter.  The lack of statutory authority to make particular order or a judgment is akin to lack of subject matter jurisdiction and is subject to collateral attack."  46 Am. Jur. 2d, Judgments § 25, pp. 388-89.  A void judgment is to be distinguished from an erroneous one, in that the latter is subject only to direct attack. A void judgment is one which, from its inception, was a complete nullity and without legal effect. Lubben v. Selective Service System, 453 F.2d 645, 649 (1st Cir. 1972).

## CONCLUSION AND RELIEF SOUGHT

WHEREFORE, Defendants have failed to establish the absence of a genuine issue as to any material fact and that the moving party is not entitled to a judgment as a matter of law.

Plaintiff urges this Court to deny Defendants' Motion for Summary Judgment in its entirety for the reasons above, grant Plaintiff's Motion for Partial Summary Judgment, declaring the Fifth Judicial Circuit Court judgment void, and issue and Order for Defendants to refund all garnishments with statutory interest, together with such other and further relief as is deemed just. In the alternative, Plaintiff requests the Court issue an Order commanding Defendants to provide

to Plaintiff 1) an authenticated copy of the limited power of attorney and fee agreement between MBNA America Bank and CLC together with the bank deposit record, and 2) an authenticated copy of the cardholder agreement between MBNA America Bank and Lance, affirmatively identifying Lance.

Prepared and signed August 13, 2012 by:

Cathy L. Lance
4006 Inverness Ct.
Riverton, WY  82501
307-463-2064
rlance@bresnan.net

19

## AFFIDAVIT

## AFFIDAVIT

I, Cathy L. Lance, Affiant, being duly sworn, depose and state that I am competent to state the matters herein and each fact stated below is based upon personal knowledge, and if called to testify to the matters herein I would testify to the following facts:

1)      On November 21, 2011, Affiant filed with the United States District Court for the District of Wyoming in Casper, Wyoming a summons and complaint naming Rocky L. Edmonds, individually and Rocky L. Edmonds, attorney at law, Gerald K. Russell, individually and Collection Law Center, Gerald K. Russell, president  for civil damages.

2)      On or about March 19, 2012, Affiant sent Plaintiff's discovery requests to Defendants.

3)      On or about April24, 2012, Affiant received Defendants' responses to Plaintiff's discovery requests.  See Exhibit A.

4)      Defendants failed or refused to produce the limited power of attorney and fee agreement between MBNA America Bank and CLC.

5)      Defendants failed or refused to produce the cardholder Agreement affirmatively identifying Lance as a debtor to MBNA America Bank.

This affidavit is made on August 13, 2012 in good faith and under penalty of perjury in the State of Wyoming that the above statements are true and correct to the best recollection of the Affiant.

_Cathy L. Lance_

Cathy L. Lance

20

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF WYOMING                          )
                                          ) ss
COUNTY OF FREMONT COUNTY                  )

Before me, the undersigned, a Notary Public in and for said County and State on this 13th

day of August, 2012, personally appeared Cathy L. Lance to me known to be the identical person

who executed the within and foregoing instrument and acknowledged to me that he executed the

same as his free and voluntary act.

Given under my hand and seal the day and year last above written.

My commission expires: 9/7/15

_____Notary Public

Jennifer L. Scheel - Notary Public
County of                 State of
Fremont                   Wyoming
My Commission Expires September 7, 2015

## CERTIFICATE OF SERVICE

On the 13th day of August, 2012, I sent by First Class Mail Plaintiff's Objection and Opposition to Defendants' Motion Summary Judgment to parties and by the method shown in the table below:

UNITED STATES DISTRICT COURT FOR                    HAND DELIVERED
THE DISTRICT OF WYOMING
Attn.: Court Clerk
Ewing T. Kerr Federal Building and U.S.
Courthouse,
111 South Wolcott
Casper, WY 82601

HIRST APPLEGATE, LLP                                     CERTIFIED MAIL
Khale J. Lenhart                                  70113500000090731311
1720 Carey Avenue, Suite 400
P.O. Box 1083
Cheyenne, Wyoming 82003

I declare under penalty of perjury under the laws of the State of Wyoming that the above is true and correct.

Prepared and signed this 13th day of July, 2012 by:

_Cathy L. Lance_

Cathy L. Lance



RICHARD G. SCHNEEBECK
KHALE J. LENHART
Hirst Applegate, LLP
1720 Carey Avenue, Suite 400
P. O. Box 1083
Cheyenne, WY 82003-1083
(307) 632-0541
FAX: 307-632-4999
rschneebeck@hirstapplegate.com
klenhart@hirstapplegate.com

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

CATHY L. LANCE,

               Plaintiff,

        vs.

ROCKY L. EDMONDS ATTORNEY AT
LAW; ROCKY L. EDMONDS,
individually, COLLECTION LAW
CENTER, P.C., GERALD K. RUSSELL,
President, GERALD K. RUSSELL,
individually, and DOES 1-10,

               Defendants.

Civil No. 11-CV-359F

## DEFENDANT COLLECTION LAW CENTER, P.C.'S ANSWERS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES, REQUESTS FOR ADMISSION AND REQUESTS FOR PRODUCTION

Defendant Collection Law Center, P.C. hereby responds to *Plaintiff's First Set of Interrogatories, Plaintiff's First Requests for Admissions of Facts and Plaintiff's Request for Production of Documents* as follows:

HIRST APPLEGATE, LLP
LAW OFFICES
1720 CAREY AVENUE, SUITE 400
P.O. BOX 1083
CHEYENNE, WYOMING 82003-1083

## INTERROGATORIES

Interrogatory 1:  State how much money the named Defendant has been paid by the Plaintiff since the disputed account was opened, delineated by principal, interest and specific fees or other charges? [sic]

Answer to Interrogatory 1:  Defendant has not been paid any money by the Plaintiff.

Interrogatory 2:  List all agreements the named Defendant alleges it has entered into with Plaintiff, including loan, credit and/or arbitration agreements, and for each provide:

(a) The names and legal addresses of all persons present at the signing of any such agreement by either Defendant or Plaintiff;
(b) The names and locations of all persons currently in possession of the loan/credit documents;
(c) The account used to transfer funds to Plaintiff's account at the origination of the disputed account;
(d) The names and locations of all institutions from which funds were drawn in originating the alleged loan or credit.

Answer to Interrogatory 2:  Defendant objects to Interrogatory 2 because it is overbroad and unlimited in time or scope.  Without waiving objection, Defendant has not entered into any agreements with the Plaintiff.

Interrogatory 3:  State whether the Defendant is in possession of the original contract or instrument affirmatively naming Plaintiff and allegedly signed by the Plaintiff? [sic]  If you possess such original contract or instrument, please attach a certified copy of both the front and back pages of this document along with your response.  If not, explain in detail why not, and the steps that Defendant has taken to secure the original.

Answer to Interrogatory 3:  Defendant objects to Interrogatory 3 because it is vague and Defendant is unsure as to which contract or instrument Plaintiff is referring to.

HIRST APPLEGATE, LLP
LAW OFFICES
1720 CAREY AVENUE, SUITE 400
P.O. BOX 1083
CHEYENNE, WYOMING 82003-1083

- 2 -

Defendant is not in possession of any original contract or instrument allegedly signed by Plaintiff. Defendant does not have any such contract or instrument because Defendant and Plaintiff have never entered into any agreement and Defendant is not the successor in interest to or holder in due course of any such agreement or instrument. Defendant has not taken any steps to secure the original because Defendant, not being a party to or holder thereof, has no interest in obtaining a document which governs a relationship to which Defendant is not a party.

Interrogatory 4: Explain in detail, each step in the origination of Plaintiff's credit card account. Include in your answer the process by which Defendant's general ledger accounting records are changed to reflect the origination of a credit card account.

Answer to Interrogatory 4: Defendant is unaware of the steps taken in the origination of Plaintiff's credit card account. Defendant was not and is not involved in the origination or servicing of any of Plaintiff's credit card accounts. Defendant's accounting records are not changed to reflect the origination of a credit card account in any way.

Interrogatory 5: If Defendant does not utilize Generally Accepted Accounting Principles ("GAAP") standards and methods, please state what accounting standards and methods Defendant does use with respect to the disputed account.

Answer to Interrogatory 5: Defendant's record of payments is kept solely in its payment transaction history contained in their case management software.

Interrogatory 6: Has the interest of the originator of disputed account been sold, transferred or conveyed since its inception and origination?

Answer to Interrogatory 6: Defendant is unaware whether the disputed account has been sold, transferred, or conveyed since its inception and origination.

Interrogatory 7: Is the disputed account automatically insured against fraudulent use, or must the card holder pay a premium for such protection?

Answer to Interrogatory 7: Defendants are unaware of whether or not the Plaintiff's account is or was automatically insured against fraudulent use or whether the cardholder must pay a premium for such protection.

Interrogatory 8: If the answer to the previous question is that the card holder must pay a premium for the insurance, is the premium included in the minimum payment amount, interest payment or annual "membership" fee?

Answer to Interrogatory 8: Defendant restates that it is unaware of whether or not Plaintiff's account is or was automatically insured against fraudulent use, and so is also unaware of any method of obtaining any premium which may exist.

Interrogatory 9: Is the disputed account automatically insured against default, or must the card holder pay a premium for such protection.

Answer to Interrogatory 9: Defendant is unaware of whether or not the Plaintiff's account is or was automatically insured against default or whether the cardholder must pay a premium for such protection.

Interrogatory 10: If the answer to the previous question is that the card holder must pay a premium for the insurance, is the premium included in the minimum payment amount, interest payment or annual "membership" fee?

Answer to Interrogatory 10:  Defendant restates that it is unaware of whether

or not Plaintiff's account is or was automatically insured against default, and so is also

unaware of any method of obtaining any premium which may exist.

Interrogatory 11:  Specify the name and function of the computer systems
and software used by Defendant in the production of billing statements and statement of
account for the account that is the subject of this cause of action.

Answer to Interrogatory 11:  Defendant does not produce billing statements

or statements of account for Plaintiff's account.  Defendant tracks Plaintiff's payments using

the DAKCS case management software.

Interrogatory 12:  Specify the name and function of the computer systems
and software used by Defendant to record and report financial accounting information for
the account that is the subject of this cause of action, for purposes of compliance with the
Sarbanes-Oxley Act of 2002.

Answer to Interrogatory 12:  Defendant does not report financial accounting

information for Plaintiff's account.  See Interrogatory Answer 11.

Interrogatory 13:   State whether the named Defendant loaned credit to
Plaintiff in the disputed account.

Answer to Interrogatory 13:  Defendant did not loan credit to Plaintiff in the

disputed account.

Interrogatory 14:  State whether the above-named Defendant's attorney(s) of
record in this case are acting pursuant to a limited power of attorney with the named
Defendant.

Answer to Interrogatory 14:  Defendant objects to this interrogatory because

it is not relevant to any of Plaintiff's claims or defenses and so is not a proper subject of

discovery under Federal Rule of Civil Procedure 26(b). Without waiving objection, the above-named attorneys are authorized to act on behalf of Defendant.

## REQUEST FOR ADMISSIONS

Request for Admission 1: Admit that the maximum threshold jurisdiction amount for the District Court of the Fifth Judicial District $7,000 on the day cause number C06-56 was filed.

Response to Request for Admission 1: Denied. On June 5, 2006, the District Court of the Fifth Judicial District had jurisdiction over all actions where the prayer for recovery exceeded $7,000, pursuant to Wyo. Stat. § 5-9-128(a)(i) and Art. 5, § 10 of the Wyoming Constitution.

Request for Admission 2: Admit that non-party MBNA American Bank is not licensed with the Secretary of State of Wyoming to transact business in Wyoming.

Response to Request for Admission 2: Admitted.

Request for Admission 3: Admit that Defendant and Plaintiff did not execute a bi-lateral written contract related to the disputed account in the above-captioned cause of action.

Response to Request for Admission 3: Admitted.

Request for Admission 4: Admit that the Defendant named in the caption of this cause of action maintains an account general ledger for the disputed account, pursuant to GAAP accounting rules, and for purposes of compliance with the Sarbanes-Oxley Act of 2002, H.R. 3763.

Response to Request for Admission 4: Denied.

Request for Admission 5: Admit that Defendant regularly audited its books and records related to the disputed account that is the basis for this claim, for purposes of tax

and regulatory reporting, including compliance with the Sarbanes-Oxley Act of 2002, H.R. 3763

      Response to Request for Admission 5:  Denied.

      Request for Admission 6.  Admit that Defendant has charged off the disputed amount claimed herein.

      Response to Request for Admission 6:  Denied.  Defendant does not own any obligation of the Plaintiff, and so has nothing to "charge off."

      Request for Admission 7:  Admit that Defendant has taken a tax write-off or other tax adjustment with respect to the disputed account that it has claimed herein.

      Response to Request for Admission 7:  Denied.  Defendant does not own the disputed account and so is not entitled to any tax write-off or tax adjustment.

      Request for Admission 8:  Admit that the Defendant named in the caption of this cause of action never loaned money or credit to the Plaintiff.

      Response to Request for Admission 8:  Admitted.

      Request for Admission 9:  Admit that the named Defendant failed to disclose to the Plaintiff the material fact that it did not loan money to the Plaintiff.

      Response to Request for Admission 9:  Denied.  Defendant is a law firm which brought a collection action against Plaintiff regarding the disputed account on behalf of its client, MBNA America Bank.  Defendant was under no obligation to disclose to Plaintiff that Defendant did not loan money to Plaintiff.

      Request for Admission 10:  Admit that Plaintiff has disputed the statement of account related to the account that is the subject of this cause of action.

Response to Request for Admission 10:  Denied. Beyond the allegations in

Plaintiff's Complaint, Defendant has received no dispute of the statement of account.

Request for Admission 11:  Admit that the named Defendant received
Plaintiff's notice of dispute and demand for validation and documentation on the disputed
account.

Response to Request for Admission 11:  Denied.  Defendant has not received

any notice of dispute or demand for validation and documentation from Plaintiff.

Request for Admission 12:  Admit that the named Defendant failed to
provide validation and verification of the alleged debt.

Response to Request for Admission 12:  Denied.  While Defendant has not

provided validation or verification of the debt to Plaintiff, Defendant did not receive any

request to provide validation and verification of the debt, and so the fact that Defendant has

not done so is not a failure.

Request for Admission 13:  Admit that Defendant filed or issued an insurance
claim related to the disputed account.

Response to Request for Admission 13:  Denied.  Defendant has not filed or

issued any insurance claim related to the disputed amount.

Request for Admission 14:  Admit that named Defendant received money,
credit, or some other valuable consideration in payment or settlement on an insurance claim
related to the alleged default in the disputed account herein.

Response to Request for Admission 14: Denied. Defendant has not filed any

insurance claim regarding Plaintiff's account, and has accordingly not received any money,

credit, or valuable consideration in payment or settlement of any insurance claim.

Request for Admission 15:  Admit that Plaintiff does not owe Defendant any debt related to the account that is the basis of cause of action.

Response to Request for Admission 15:  Admitted.

## REQUEST FOR PRODUCTION

Request for Production 1:  A certified copy of documentary evidence of Defendant's authority to operate a credit card enterprise, including but not limited to any applicable corporate charter and articles of incorporation.

Response to Request for Production 1:  Defendant has no documents showing authority to operate a credit card enterprise.

Request for Production 2:  A verified copy, front and back, of the original contract/agreement affirmatively naming Plaintiff, between the Defendant and Plaintiff with respect to the disputed account herein, in its entirety.

Response to Request for Production 2:  Defendant does not have any contract or agreement between the Defendant and Plaintiff.

Request for Production 3:  A verified copy of the complete set of original bookkeeping entries made by Defendant from the origination of the disputed account to charge off, including, but not limited to all general ledger and accounting entries used to support Defendant's compliance with the requirements of the Sarbanes-Oxley Act of 2002, H.R. 3763.

Response to Request for Production 3:  Defendant's bookkeeping entries are contained entirely in the payment transaction history provided in Defendant's Rule 26(a)(1) Initial Disclosures.  See documents number HA000007-000021.

Request for Production 4:  Certified Electronic copies of all accounting records pertaining to the disputed account.

Response to Request for Production 4:   Defendants do not have any accounting records other than the payment transaction history disclosed in Defendant's Rule 26(a)(1) Initial Disclosures.

Request for Production 5:   Certified Electronic copies of all billing records pertaining to the disputed account.

Response to Request for Production 5:   Defendants do not have any billing records pertaining to the disputed account.

Request for Production 6:   All documents intended to be used by Defendant as evidence to show that the named Defendant is the owner or holder in due course of the contract, note or other instrument that is the subject of this cause of action.

Response to Request for Production 6:   Defendant does not intend to use any documents to show that Defendant is the owner or holder in due course of the contract, note, or other instrument that is the subject of this lawsuit.

Request for Production 7:   A copy of any limited power of attorney or other agreement authorizing counsel named as Defendant's attorney to represent the Defendant named in the caption of this cause of action.

Response to Request for Production 7:   Defendant objects to this request because it is not relevant to any of Plaintiff's claims or defenses and so is not a proper subject of discovery under Federal Rule of Civil Procedure 26(b).

**ALL OBJECTIONS TO THE ABOVE INTERROGATORIES WERE INTERPOSED BY THE UNDERSIGNED ATTORNEY.   THE ANSWERS PROVIDED HEREIN ARE MADE ACCORDING TO THE FEDERAL RULES OF CIVIL PROCEDURE AND THE LOCAL RULES FOR THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF WYOMING.**

Dated: 23 April 2012.

BY: _____

RICHARD G. SCHNEEBECK, #5-2395
KHALE J. LENHART, #7-4581
OF HIRST APPLEGATE, LLP
Attorneys for Above-Named Defendant
1720 Carey Avenue, Suite 400
P. O. Box 1083
Cheyenne, WY 82003-1083
(307) 632-0541

Dated: 20 April 2012.

COLLECTION LAW CENTER, P.C.

BY: _____

Rocklon Edmonds, Shareholder
Edmonds and Russell, P.C.
(Formerly Collection Law Center)

STATE OF WYOMING    )
                        ) SS

COUNTY OF LARAMIE   )

      Rocklon Edmonds, being duly sworn, deposes and says that he is a Shareholder for Russell and Edmonds, formerly Collection Law Center, that he does not have personal knowledge of all the facts recited in the foregoing Answers and Responses but the information has been gathered by and from employees or representatives of Russell and Edmonds, that the Responses are true to the best of his belief based upon the information supplied by such employees or representatives; and that the foregoing Answers and Responses are verified by him as a Shareholder for Russell and Edmonds in accordance with the Federal Rules Civil Procedure.

ROCKLON EDMONDS

Subscribed and sworn to before me by Rocklon Edmonds this 20ᵀᴴ day of _____ Witness my hand and official seal. My commission expires: 10/12/203

Notary Public

**CERTIFICATE OF SERVICE**

      I certify the foregoing *Defendant Collection Law Center, P.C.'s Answers and Responses to Plaintiff's First Set of Interrogatories, Requests for Admission and Requests for Production* was served upon all parties to this action pursuant to the Federal Rules of Civil Procedure on *23* April 2012, and that copies were served as follows:

Cathy L. Lance                           [ ✓ ] U.S. MAIL
4006 Inverness Court              [   ] FED EX
Riverton, WY 82501               [   ] FAX
rlance@bresnan.net               [   ] HAND DELIVERED
                                     [   ] ELECTRONIC MAIL

OF HIRST APPLEGATE, LLP
Attorneys for Above Defendant

HIRST APPLEGATE, LLP             - 12 -
LAW OFFICES
1720 CAREY AVENUE, SUITE 400
P.O. BOX 1083
CHEYENNE, WYOMING 82003-1083

EXHIBIT

**B**

Ch. 24          SESSION LAWS OF WYOMING, 2000          70

(i) An action where the prayer for recovery is an amount not exceeding seven thousand dollars ($7,000.00), exclusive of court costs;

(ii) Actions to recover specific personal property the value of which does not exceed seven thousand dollars ($7,000.00), exclusive of court costs and shall be prosecuted in accordance with W.S. 1-15-301 through 1-15-306;

(iii) Actions to foreclose or enforce a lien on or security interest in personal property perfected under the Uniform Commercial Code, W.S. 34.1-1-101 through 34.1-10-104, when the amount claimed on the lien or security interest does not exceed seven thousand dollars ($7,000.00), exclusive of court costs;

(iv) Actions for small claims as provided by W.S. 1-21-201 through 1-21-205;

(v) Actions for forcible entry or detainer as provided by W.S. 1-21-1001 through 1-21-1016;

(vi) Actions to foreclose and enforce the following statutory liens only, when the amount claimed on the lien does not exceed seven thousand dollars ($7,000.00) exclusive of court costs:

(A) Construction liens as provided by W.S. 29-2-101 through 29-2-109;

(B) Liens for labor and materials as provided by W.S. 29-4-101 and 29-4-102;

(C) Liens for labor and services as provided by W.S. 29-5-101 through 29-5-106 and 29-7-101 through 29-7-202; and

(D) Liens for taxes as provided by W.S. 39-15-108(d) and 39-16-108(d).

(vii) Actions to dispose of an abandoned vehicle as provided by W.S. 31-13-112(e), regardless of the value of the abandoned vehicle.

~~(c)~~(b) The ~~county~~ circuit court may issue writs of attachment or garnishment as provided by W.S. 1-15-101 through 1-15-212 and 1-15-401 through 1-15-511, and may issue judgment, execution and stay of execution, and order the sale of the property seized under execution as provided by W.S. 1-19-101 through 1-19-108 and 1-21-401 through 1-21-703. A writ of execution issuing from a ~~county~~ circuit court shall be in the form and subject to the provisions of W.S. 1-17-308.

~~(d)~~(c) The judge may submit to arbitration any civil matter pending in ~~county~~ circuit court, upon agreement of the parties as provided by W.S. 1-21-801 through 1-21-804, or upon application of either party showing an arbitration agreement and refusal of the opposing party to arbitrate as provided by W.S. 1-36-101 through 1-36-119.

~~(e)~~(d) The provisions of W.S. 5-1-107 pertaining to the exercise of personal jurisdiction apply in the ~~county~~ circuit courts.

Ch. 41          SESSION LAWS OF WYOMING, 2001          82

*Be It Enacted by the Legislature of the State of Wyoming:*

**Section 1.** W.S. 5-9-128(a)(intro) is amended to read:

**5-9-128.   Civil jurisdiction.**

(a)   Each circuit court has ~~exclusive~~ original civil jurisdiction within the boundaries of the state for:

**Section 2.** This act is effective immediately upon completion of all acts necessary for a bill to become law as provided by Article 4, Section 8 of the Wyoming Constitution.

Approved February 16, 2001.


**Chapter 41**


SEXUAL BATTERY


Original House Bill No. 80


AN ACT relating to crimes and offenses; defining the crime of sexual battery; providing a penalty; and providing for an effective date.

*Be It Enacted by the Legislature of the State of Wyoming:*

**Section 1.**   W.S. 6-2-313 is created to read:

**6-2-313.   Sexual battery.**

(a)   Except under circumstances constituting a violation of W.S. 6-2-302 through 6-2-304, 6-2-502 or 14-3-105, an actor who unlawfully subjects another person to any sexual contact is guilty of sexual battery.

(b)   Sexual battery is a misdemeanor punishable by imprisonment for not more than one (1) year, a fine of not more than one thousand dollars ($1,000.00), or both.

**Section 2.**   W.S. 6-2-301(a)(ix) is amended to read:

**6-2-301.   Definitions.**

(a)   As used in this article:

(ix)   "This article" means W.S. 6-2-301 through ~~6-2-312~~ 6-2-313.

**Section 3.** This act is effective July 1, 2001.

Approved February 16, 2001.

in W.S. 1-21-201 through 1-21-205. The department of revenue may consolidate claims for collection of taxes against a single taxpayer into a single case under the procedures in W.S. 1-21-201 through 1-21-205 subject to specified dollar limitations.

**5-3-112. Assignment to circuit court judge.**

(a) A judge of the district court may assign to a circuit court judge any case or proceeding within the jurisdiction of the district court subject only to the following restrictions:

(iii) Consent of each plaintiff and each defendant in a civil action wherein the amount in controversy is ~~twenty thousand dollars ($20,000.00)~~ fifty thousand dollars ($50,000.00) or greater; and

**5-9-128. Civil jurisdiction.**

(a) Each circuit court has exclusive original civil jurisdiction within the boundaries of the state for:

(i) An action where the prayer for recovery is an amount not exceeding ~~seven thousand dollars ($7,000.00)~~ fifty thousand dollars ($50,000.00), exclusive of court costs;

(ii) Actions to recover specific personal property the value of which does not exceed ~~seven thousand dollars ($7,000.00)~~ fifty thousand dollars ($50,000.00), exclusive of court costs and shall be prosecuted in accordance with W.S. 1-15-301 through 1-15-306;

(iii) Actions to foreclose or enforce a lien on or security interest in personal property perfected under the Uniform Commercial Code, W.S. 34.1-1-101 through 34.1-10-104, when the amount claimed on the lien or security interest does not exceed ~~seven thousand dollars ($7,000.00)~~ fifty thousand dollars ($50,000.00), exclusive of court costs;

(vi) Actions to foreclose and enforce the following statutory liens only, when the amount claimed on the lien does not exceed ~~seven thousand dollars ($7,000.00)~~ fifty thousand dollars ($50,000.00), exclusive of court costs:

**Section 2.** This act is effective July 1, 2011.

Approved March 10, 2011.