IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| CATHY L. LANCE,<br><br>Plaintiff,<br><br>vs.<br><br>ROCKY L. EDMONDS ATTORNEY AT LAW; ROCKY L. EDMONDS, individually, COLLECTION LAW CENTER, P.C., GERALD K. RUSSELL, individually, and DOES 1-10,<br><br>Defendants. | Case No. 11-CV-359-S |

**ORDER GRANTING DEFENDANT COLLECTION LAW CENTER, P.C.'S MOTION FOR SUMMARY JUDGMENT**

This matter comes before the Court on Defendant Collection Law Center, P.C.'s Motion for Summary Judgment [Doc. 24]. The Court, having reviewed the Motion and the memoranda both in support and opposition thereto, having reviewed the case file, and considering itself otherwise fully advised in the premises of Defendant's Motion, FINDS and ORDERS as follows:

**BACKGROUND FACTS**

1. This lawsuit arises out of debt collection actions brought by Defendant Collection Law Center, P.C. ("CLC") on a debt incurred by Plaintiff Cathy Lance in connection with a credit card

issued by MBNA America Bank, N.A. ("MBNA"). In May, 2004, Lance applied for and received a credit card from MBNA. (Complaint, ¶ 27.) By August, 2004, MBNA alleged that Plaintiff owed $36,873.60. In a letter dated August 11, 2004, Wolpoff & Abramson, L.L.P., a debt collection law firm, sent Lance a letter indicating that it had been retained by MBNA and notifying Lance that MBNA alleged that a balance of $36,873.60 was due and owing with respect to Lance's MBNA credit card. (Complaint Ex. 1.) The letter informed Lance that if she disputed the debt, or any portion thereof, she should take advantage of her right to dispute the debt, as described in an "important notice" on the reverse side of the letter. (*Id.*)

2. On May 13, 2005, Wolpoff & Abramson filed a claim before the National Arbitration Forum relating to the debt. (Complaint, ¶ 29; Complaint Ex. 2.) On May 31, 2005, Lance filed a "Notice of Objection to the Arbitration Claim." (Complaint, ¶ 30; Complaint Ex. 3.) On August 12, 2005, the arbitrator found in favor of MBNA and issued an award in the total amount of $43,532.95. (Complaint, ¶ 33; Complaint Ex. 6.)

3. On September 26, 2005, CLC sent Lance a letter on behalf of MBNA, informing Lance of MBNA's intent to collect on the award and to obtain a judicial confirmation of the arbitration award, if necessary. (Complaint Ex. 7.) This letter contained another notice giving Lance the opportunity to dispute or request validation of the debt within 30 days after receiving the notice. (*Id.*) Plaintiff does not allege or offer evidence that she disputed or requested validation of the debt within 30 days after receiving CLC's letter.

4. On January 4, 2007, the District Court of the Fifth Judicial District in and for Hot Springs

County, Wyoming entered Judgment in favor of MBNA in the amount of $47,440.78 with post-judgment interest of 10%. (CLC Summary Judgment Ex. F.)

    5. On September 18, 2007, Lance's employer, Absaroka Head Start, was served with a Writ of Garnishment. (CLC Summary Judgment Ex. G.) Absaroka Head Start answered the writ on November 5, 2007 and submitted garnishment checks beginning in November 2007. (CLC Summary Judgment Ex. H.) Absaroka Head Start continued to file answers with garnishment checks until September 2011 even though it was not served with any other garnishments by MBNA or CLC between November 2007 and September 2011. (*Id.*) Absaroka Head Start ceased filing answers on the garnishment in October 2011. (*Id.*) Absaroka Head Start was served with a new writ of garnishment and resumed making payments in December 2011. (*Id.*)

    6. On November 21, 2011, Plaintiff filed her Complaint in this matter, alleging four causes of actions against Defendant CLC: (1) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p; (2) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968; (3) violation of Wyoming's garnishment statutes, Wyo. Stat. §§ 1-15-501 to 1-15-509; and (4) fraud on the court.

**DISCUSSION**

*First Cause of Action: Fair Debt Collections Practices Act*

    7. The Fair Debt Collection Practices Act requires that claims be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). All of the conduct which Lance alleges entitles her to recovery under the FDCPA occurred prior to January 4, 2007, the date

the District Court of the Fifth Judicial District in and for Hot Springs County, Wyoming entered summary judgment in favor of MBNA.  *See   Johnson v. Riddle*, 305 F.3d 1107, 1113 (10th Cir. 2002) (FDCPA claim based upon initiation of a wrongful debt collection action accrues on the date the action was served upon the Plaintiff).  Even giving Plaintiff the benefit of the date of the order granting summary judgment as the statute of limitations trigger,  Lance would have been required to file any FDCPA claims by January 4, 2008.  Lance did not initiate the present action until November 21, 2011, almost five years after the collection action ended and nearly four years after the statute of limitations unquestionably expired.

8.  Nonetheless, Plaintiff asserts her FDCPA claims are viable because she did not learn of the wrongdoings of Defendant until ten months ago." (Pl. Resp., ¶ 19(a)(i).)  She acknowledges that only then did she undertake "a diligent inquiry into the circumstances surrounding [her] collision with debt collectors . . . ." and that "[u]ntil that time, Plaintiff assumed Defendant to be honorable and acting in good faith."  (*Id.*, ¶ 17(b). )  Plaintiff's argument fails as a matter of law.  Although the Tenth Circuit has expressed doubt as to the applicability of the federal discovery rule in the context of the FDCPA, *see Johnson,* 305 F.3d at 1114, n.3, even assuming the rule applied in this context, Lance knew or should have known of the existence of any FDCPA claims arising out of debt collection letters or the state court debt collection action well in advance of January 4, 2007.  *See Robinson v. BNSF Ry. Co.,* 412 Fed.Appx. 113, 116 (10th Cir. 2011) (noting that the discovery rule requires "an objective inquiry into when the plaintiff knew or should have known, in the exercise of reasonable diligence, the essential facts of injury and cause") (*quoting Fries v. Chi. & Nw.*

*Transp. Co.*, 909 F.2d 1092, 1094 (7th Cir. 1990)). Because any of the FDCPA claims Plaintiff asserts would have expired well before one year prior to the initiation of this lawsuit, Plaintiff's FDCPA claims are barred as a matter of law by the statute of limitations.

*Second Cause of Action: Racketeer Influenced and Corrupt Organizations Act (RICO)*

9. The statute of limitations for a RICO action is four years. *Cory v. Aztec Steel, Bldg., Inc.*, 468 F.3d 1226, 1234 (10th Cir. 2006) (citing *Rotella v. Wood*, 528 U.S. 549, 552, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000)). "While the Supreme Court has not settled upon a definitive rule for when the limitations clock starts running, it has announced two possibilities: either when the plaintiff knew or should have known of his injury (the injury-discovery rule); or when the plaintiff was injured, whether he was aware of the injury or not (the injury-occurrence rule)." *Cory*, 468 F.3d at 1234 (citing *Rotella*, 528 U.S. at 553 & 554, n.2, 120 S.Ct. 1075).[1] Plaintiff's RICO claim is untimely under either rule.

10. Plaintiff's RICO claim asserts that Defendants "wrongfully claim[ed] and collect[ed] a false and fictitious debt affecting interstate commerce by and through the U.S. Mail and illegal Court sanctioned garnishments to swindle Plaintiff's compensation in a pattern of racketeering activity." (Complaint, ¶ 68.) Plaintiff had notice of this claim at a minimum on September 18, 2007, when Lance's employer, Absaroka Head Start, was served with a Writ of Garnishment and

---

[1] The Tenth Circuit declined to choose between the injury-occurrence rule and the injury-discovery rule in *Cory*, finding that the result in that case would be the same no matter which rule was applied. *Cory*, 468 F.3d at 1234.

certainly by November 5, 2007, when Absaroka Head Start answered the writ and began submitting garnishment checks. (CLC Summary Judgment Exs. G, H.) However, Plaintiff's Complaint was not filed until November 21, 2011, more than four years after either event. Accordingly, Plaintiff's RICO claim is similarly barred as a matter of law by the applicable statute of limitations.

*Third Cause of Action: Wyoming Garnishment Statutes, Wyo. Stat. § 1-15-501 to -509*

      11.    The Wyoming continuing garnishment statute provides:

> (a) . . . [I]n any case in which a money judgment is obtained in a court of competent jurisdiction the judgment creditor or his assignees shall be entitled . . . to have the clerk of the court issue a writ for continuing garnishment against any garnishee who is an employer of the judgment debtor. Issuance of a writ of execution is not a prerequisite to issuance of a writ of continuing garnishment. To the extent that the earnings are not exempt from garnishment, the garnishment shall be a lien and continuing levy upon the earnings due or to become due to the judgment debtor at the time the writ of continuing garnishment is served on the garnishee.
>
> (b) . . . [G]arnishment pursuant to subsection (a) of this section shall be a lien and continuing levy against said earnings due until such time as the employment relationship is terminated, the underlying judgment is vacated, modified or satisfied in full, the writ is dismissed, or ninety (90) days have expired since service of the writ, whichever is sooner . . . .

Wyo. Stat. § 1-15-502. Plaintiff's employer, Absaroka Head Start, was served with a writ of garnishment on September 18, 2007 and on November 5, 2007, it answered the writ and began submitting garnishment checks. Plaintiff's employer continued to file answers with garnishment checks until September 2011 even though it was not served with any other garnishments by MBNA or CLC between November 2007 and September 2011. (CLC Summary Judgment Exs. G, H.) Plaintiff asserts that CLC violated this statute by accepting garnishment payments from her

employer without seeking continuing writs of garnishment from the Court. Plaintiff fails to cite the Court to any authority recognizing a private cause of action based on a violation of Wyo. Stat. § 1-15-502(b). Further, Plaintiff fails to cite the Court to any authority suggesting that CLC or MBNA had an obligation to return funds that were properly owed, even if the funds were garnished pursuant to Plaintiff's employer's mistake. As CLC notes, the failure to seek continuing garnishment did not impact MBNA's entitlement to funds. Rather, a continuing garnishment serves only to provide a legal means by which a judgment creditor can force a judgment debtor to pay a debt owed. *See Marriage of Eklofe*, 586 N.W.2d 357, 359 (Iowa 1998) ("[g]arnishment is a process which permits a creditor to enforce the payment of a debt or claim through property or money of the debtor held by another"); *see also* Wyo. Stat. § 1-15-501(a)(i) ("'[c]ontinuing garnishment' means any procedure for witholding the earnings of a debtor for successive pay periods for payment of a judgment debt"); Wyo. Stat. § 1-15-501(a)(vi) ("'[g]arnishment' means any procedure through which the property or earnings of an individual in the possession or control of a garnishee are required to be withheld for payment of a judgment debt"). Although Plaintiff's employer continued to garnish Plaintiff's wages for a period of time without a continuing writ of garnishment in place, that fact has no bearing on MBNA's entitlement to the judgment amount. The absence of a continuing writ of garnishment meant only that MBNA and CLC could not have forced Plaintiff's employer to make garnishment payments during that period. However, Plaintiff fails to provide any authority establishing a private cause of action entitling her to the return of funds or the recovery of damages for a violation of the Wyoming continuing garnishment statute. As a result, this claim

fails as a matter of law.

*Fourth Cause of Action: Fraud on the Court*

12. Plaintiff's fourth cause of action for "fraud on the court" seeks damages "in an amount in excess of One Hundred Thousand Dollars ($100,000)." (Complaint, ¶ 90.) However, fraud on the court is not a tort claim giving rise to monetary damages. *See Dowlin v. Dowlin*, 162 P.3d 1202, 1205 (Wyo. 2007). Instead, as set forth in Wyo. Stat. § 1-16-401, the proper remedy to a litigant who alleges that a judgment has been obtained fraudulently, is to bring that claim before the district court that issued the fraudulently-obtained judgment and ask that the judgment be vacated or set aside. *See id.* at 1207; *see also* Wyo. Stat. § 1-16-401(a) ("[a] district court *may vacate or modify its own judgment . . .*") (emphasis added).

13. Plaintiff has not requested vacation or modification of the prior judgment. (Complaint, ¶ 90; *id.*, Prayer for Relief.) Even if Plaintiff had requested vacation or modification of the prior judgment, this is not the proper court in which to seek such a remedy. Accordingly, Plaintiff's claim for fraud on the court fails as a matter of law.

## CONCLUSION

Wherefore, for the reasons set forth more fully above, Defendant CLC's Motion for Summary Judgment [Doc. 24] is **GRANTED**. Defendant CLC shall bear its own fees and costs.

**IT IS SO ORDERED.**

Dated this  30  day of November, 2012.

Scott W. Skavdahl
United States District Judge